IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA, DEPARTMENT OF
LEGAL AFFAIRS,

    *Plaintiff*,

v.                                        Case No.: 3:25cv676-MW/HTC

SNAP INC.,

    *Defendant*.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

This Court has considered, without hearing, Defendant's notice of removal, ECF No. 1, Plaintiff's motion to remand, ECF No. 14, Defendant's response in opposition and attached exhibits, ECF No. 23, and Plaintiff's reply in support, ECF No. 34. For the reasons explained below, Plaintiff's motion, ECF No. 14, is **DENIED**.

I

Plaintiff, the Department of Legal Affairs in the Florida Office of the Attorney General ("DLA"), initiated this action against Defendant Snap Inc. ("Snap") in Florida state court. ECF No. 1-1. Snap is a social media company that operates the platform Snapchat. The complaint alleges that Snap is violating two Florida statutes: section 501.1736, Fla. Stat. (which the parties refer to as "H.B. 3") and the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"). As relevant here, H.B. 3 prohibits certain social media companies from allowing Florida youth under the age of 14 to hold accounts on their platforms and from allowing Florida youth between the ages of 14 and 15 to hold accounts without affirmative parental consent. § 501.1736, Fla. Stat. Social media platforms are covered by the law if, in addition to meeting other requirements not relevant here, they employ algorithms that analyze user data or information to select content for users and employ any one of five "addictive features," such as auto-play video. *Id.* The FDUTPA prohibits "unfair or deceptive acts or practices" by businesses. § 501.204, Fla. Stat.

Snap removed the case to federal court, asserting federal officer removal jurisdiction.[1] Snap argues that this Court has jurisdiction under the federal officer removal statute because two federal agencies, the Food and Drug Administration and the Department of Homeland Security, have used Snap to carry out public information campaigns. ECF No. 1 ¶¶ 11–20. Specifically, pursuant to its statutory responsibility to conduct educational and public information programs about the use of tobacco by minors,[2] the FDA has used Snap to reach teenagers with public health

---

[1] Snap also asserts diversity jurisdiction. ECF No. 1 ¶¶ 26–32. But because this Court finds that it has jurisdiction under the federal officer removal statute, it does not address Snap's arguments for diversity jurisdiction.

[2] The Federal Food, Drug, and Cosmetic Act tasks the Commissioner of the FDA with "conducting educational and public information programs relating to the responsibilities of the Food and Drug Administration." 21 U.S.C. § 393(d)(2)(D). One of those responsibilities, as established by the Family Smoking Prevention and Tobacco Control Act, is to regulate tobacco.

messages about the risks of vaping and cigarette use by purchasing "Snap Ads" and "Commercials" on the platform and directing that they be targeted to users between the ages of 13 and 17.[3] *Id.* ¶¶ 4–5. The FDA contracts with a third-party marketing agency to assist in preparing its public information campaigns, and it approved campaigns targeted to teenagers on Snap for both 2024 and 2025 after requesting and reviewing proposals from Snap and the marketing agency on how Snap could help the FDA achieve its goals. *Id.* ¶¶ 8–14. Throughout the campaigns, a Snap representative meets biweekly with the marketing agency to review the campaign's performance and pacing of the advertising spend and to receive direction from the FDA on how to better reach its goals. *Id.* ¶ 8. Separately, pursuant to its statutory responsibility to conduct "outreach and training activities" concerning child exploitation prevention,[4] DHS has entered into two memorandums of understanding with Snap under which Snap conducts custom research on teen users' awareness of

---

21 U.S.C. § 387a(a). Congress granted the FDA the authority to regulate tobacco in part to ensure that the agency had the authority to address "the use of tobacco by young people." Pub. L. No. 111-31, § 3, 123 Stat. 1776, 1781 (2009).

[3] "Snap Ads" are videos that are shown to users who are clicking through content on the platform and that the user can skip if desired. ECF No. 23-1 ¶ 5. "Commercials" are not skippable and "require the user to view the video story in its entirety before accessing other Snapchat content." *Id.* Snap employs its "proprietary technology and process, including algorithms" to target these video messages to the FDA's selected audience. *Id.* ¶ 11.

[4] The Child Exploitation Investigations Unit within DHS is required to "focus on . . . child exploitation prevention" and "collaborate with other governmental, nongovernmental, and nonprofit entities" for "outreach and training activities." 6 U.S.C. § 473(b)(2)(B)(i), (b)(2)(F).

3

online risks and distribute DHS's video advertisements to teens. ECF No. 23-8 ¶¶ 3–12; ECF No. 23-10 at 3.

## II

Federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Accordingly, this Court may exercise jurisdiction over a case only if it satisfies one of the statutory bases for jurisdiction created by Congress. The removing party, Snap, bears the burden of establishing federal jurisdiction. *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). As previously noted, Snap asserts that this Court has federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), allows removal to federal court of any civil action against "any person acting under" an officer of the United States "for or relating to any act under color of such office." Because Snap is not a federal officer itself, it must satisfy a three-prong test for removal to be proper. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017). First, it must show that it is a person within the meaning of the statute who acted under a federal officer. *Id.* Second, it must show that it is being sued "for or relating to" acts performed under color of federal office. *Id.* at 1144. Third, Snap must raise a colorable federal defense to the action. *Id.* at 1142. DLA makes no argument that Snap is not a "person" within the meaning of the statute or that Snap is not raising a

4

colorable federal defense, and this Court finds that both of those requirements are satisfied.[5] Accordingly, whether federal officer jurisdiction is appropriate in this case turns on whether Snap "acted under" a federal officer and whether it is being sued "for or relating to" any act performed under official authority. This Court will discuss each of these requirements in turn. But first, a few words are in order about the scope of the federal officer removal statute and this case.

Unlike the general removal statute, the federal officer removal statute is "liberally construed" in favor of a federal forum, and doubts are not resolved in favor of remand. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5835311, at *3 n.9 (N.D. Fla. Oct. 1, 2020) (citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150 (2007)). Although not limitless, both statutory elements at issue in this case are defined in "broad" language. *Caver*, 845 F.3d at 1142, 1144. The statute's "basic purpose is to protect the Federal Government from state interference with its operations." *Caver*, 845 F.3d at 1142 (quoting *Watson*, 551 U.S. at 150) (internal quotation marks and brackets omitted). The Supreme Court has directed that the statute's policy of providing the protection of a federal forum to federal officers

---

[5] Snap is a corporation, and corporations are persons under section 1442(a)(1). *Id.* at 1144. As for the colorable federal defense requirement, Snap raises the First Amendment, the Children's Online Privacy Protection Act, and the Commerce Clause as defenses to the claim that it is violating H.B. 3. ECF No. 1 ¶ 42. This is sufficient to meet the requirement of a "colorable federal defense," which requires only that a defense "depend[ ] on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). It need not arise from a federal duty. *See In re Commonwealth's Mot. to Appoint Counsel*, 790 F.3d 457, 473 (3d Cir. 2015).

"should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). And Congress has repeatedly amended the statute to expand its protections. *See Watson*, 551 U.S. at 148–49; *see also Caver*, 845 F.3d at 1144 n.8.

This is not an easy case. In some cases, it is obvious that a private party falls within the bounds of section 1442(a)(1). The prototypical example is a contractor hired to produce an item for the federal government according to its specifications. *See Watson*, 551 U.S. at 153–54. In other cases, it is obvious that, despite having some relationship to the government, a private party does not fall within the bounds of the statute. The simple sale of a standardized commercial product to the government likely does not create federal officer jurisdiction.[6] So, for example, an office supply store likely would not fall within the bounds of the statute if it simply sold reams of standard printer paper to a government agency. This case falls somewhere in between those obvious extremes. But while, at first glance, Snap's relationships with DHS and FDA may not seem of the kind that federal officer removal is designed to protect, this Court is required to "liberally" construe the statute to effectuate its "basic purpose" of protecting the federal government from state interference with its operations. And here, DLA's H.B. 3 claim, if successful,

---

[6] The Eleventh Circuit has not addressed this question. But other circuits have, and this Court finds their approach persuasive. *See, e.g.*, *Cnty. Bd. of Arlington Cnty. v. Express Scripts*, 996 F.3d 243, 253 (4th Cir. 2021)

would directly interfere with existing federal contracts designed to further the federal government's task of communicating information to youth in Florida. With that in mind, this Court proceeds to its analysis.

III

A

First, this Court assesses whether Snap has satisfied the "acting under" requirement of the test for federal officer jurisdiction. The requirement concerns the "triggering relationship" between a private entity and a federal officer. *Watson*, 551 U.S. at 149. The statutory phrase "acting under" is broad and is to be "liberally construed." *Id.* at 147. But it is "not limitless." *Id.* It is constrained by the "text's language, context, history, and purposes." *Id.* Those limits dictate that, to meet the requirement, the private party must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior." *Id.* at 152 (emphasis in original). And the relationship must be one of "subjection, guidance, or control." *Id.* at 151.

Snap's relationships with DHS and FDA clear this bar. Snap has contracted with these agencies to provide services that assist them in accomplishing their statutory responsibilities to conduct public information campaigns. When the FDA chose to advertise on Snapchat in 2024 and 2025, it entered into an agreement under which Snap would employ its technology to show FDA's messages to users aged 13

7

to 17, including users in Florida.[7] *Id.* ¶¶ 3–5, 11, 13. As part of this process, a Snap representative prepared proposals for the FDA's review and meets weekly with an FDA contractor to review the campaigns' performance and the pacing of the advertising spend.[8] *Id.* ¶¶ 8, 12. Similarly, DHS has entered into agreements with Snap under which Snap conducts custom research on its users between the ages of 13 to 24 for DHS and targets DHS advertisements to teen users. ECF No. 23-8 at ¶¶ 5, 10–11. Snap's relationships with both agencies thus involve an effort to assist or help carry out the tasks of a federal superior under that superior's guidance and control.

DLA points to an Eleventh Circuit case to argue that Snap must also show that it has an "unusually close" or "extensive" relationship with a federal superior and

---

[7] Snap's declarant, Madi Howells, states that Snap has purchased advertisements through Snap since September 2019. ECF No. 23-1 ¶ 3. She also states that in 2024, the FDA "targeted 100% of its multi-million Snap advertising campaign at Snap users aged 13 to 17" and that in 2025, all of FDA's advertising campaigns are directed to the same group. *Id.* ¶¶ 4, 11. But because the declaration does not specify which demographic groups were targeted by previous advertising campaigns, this Court limits its discussion to the 2024 and 2025 campaigns.

[8] DLA seizes on the fact that much of the direction that Snap receives from FDA is through a marketing agency that the FDA has hired to coordinate its advertising campaigns. ECF No. 14-1 at 25–26. But other courts that have considered similar arguments have concluded that a private party may meet the requirements for federal officer jurisdiction even if it was a subcontractor. *See Express Scripts*, 996 F.3d at 254. DLA seeks to distinguish *Express Scripts* on the basis that there the private defendants were "directly accountable to the federal government," were "at all times, subject to the federal government's guidance and control," and were performing a service "substantially different than the simple sale of commercial goods to the government." ECF No. 34 at 7. But the evidence Snap has submitted indicates that, when executing FDA's advertising campaigns, it *is* directly accountable to FDA and subject to its guidance and control. *See, e.g.*, ECF No. 23-1 at ¶¶ 8, 11. And targeted advertising campaigns, while close to the line, strike this Court as distinct from the simple sale of commercial goods because they require tailoring the execution of the service to the government's directions.

8

that the federal superior controls almost all of Snap's actions. ECF No. 14-1 at 31–33 (citing *Caver*, 845 F.3d at 1142–46). But *Caver* does not support this argument. There, the court concluded that federal officer jurisdiction was appropriate in a case against a rural electric cooperative after examining the historical relationship between the federal government and rural electric cooperatives and the degree of control the government exercised over the cooperative's operations. 845 F.3d at 1138–44. Importantly, however, those factors were significant in *Caver* because the cooperative did not have a contract with the federal government to provide services, it merely received loans from the federal government. *Id.* at 1138. In the absence of a contract for services, the Eleventh Circuit looked to the broader context to determine whether the cooperative was nevertheless "acting under" a federal officer. And because that context rendered the cooperative "closer in kind to a federal contractor performing work on behalf of the government than a private business working for its own ends," the court concluded that it was. *Id.* at 1144.

The broader contextual inquiry that was required in *Caver* is unnecessary here because, unlike the cooperative, Snap *is* a federal contractor that performs work on behalf of the government. DLA objects that it is also a private business working for its own ends. ECF No. 34 at 6 n.2. But that is true of most federal contractors—they are typically private entities that serve their own ends at least in part by contracting with the government to provide services. The dispositive question here is whether

9

Snap is assisting the federal government in carrying out its tasks and doing so under the federal government's guidance or control. Because it is, this Court concludes that Snap has satisfied the "acting under" requirement for federal officer jurisdiction.

B

Second, this Court evaluates whether Snap has shown that at least one of the claims against it is "for or relating to" an act performed under color of federal office. Prior to 2011, the federal officer removal statute applied only where a party was sued "*for* any act under color of [federal] office." *In re Commonwealth's Mot.*, 790 F.3d at 470 (emphasis and alteration in original). Under that version of the statute, proponents of removal jurisdiction were required to show that the acts for which they were being sued occurred at least in part "*because of* what they were asked to do by the Government." *Id.* (quoting *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008)) (emphasis in original). But in 2011, Congress amended the statute to include suits "relating to" acts performed under color of office, and the legislative history made clear that this amendment was intended to "broaden the universe of acts" that provide a basis for federal officer jurisdiction. *Id.* (quoting H.R. REP. NO. 112-17, pt. 1 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420, 425). "The phrase 'relating to' is broad and requires only 'a connection or association between

the act in question and the federal office.'" *Caver*, 845 F.3d at 1144 (quoting *In re Commonwealth's Mot.*, 790 F.3d at 471).

Analysis of this element must begin by identifying the acts underlying the claims against Snap. *See State v. Meadows*, 88 F.4th 1331, 1343–44 (11th Cir. 2023). And because the federal officer removal statute permits removal of the entire action if even one of the claims satisfies its requirements, this Court focuses on the H.B. 3 claim.[9] That claim seeks to impose liability on Snap for allowing youth under 14 to hold accounts on Snapchat at all and allowing youth aged 14 and 15 to hold accounts on Snapchat without parental consent, while also employing infinite scrolling, push notifications, the display of personal interactive metrics, and auto-play video. ECF No. 1-1 ¶¶ 44–56, 138–145. The question, then, is whether these actions by Snap "relat[e] to" its acts under color of federal office.

DLA argues that its claims against Snap cannot be considered "for or relating to" acts performed under color of federal office because Snap did not adopt the features targeted by H.B. 3 at the federal government's direction. ECF No. 34 at 8. But that misconstrues the test. The statute does not limit federal officer jurisdiction only to cases in which the defendant's potential liability is limited to acts performed

---

[9] Some courts have interpreted section 1442 as creating mandatory supplemental subject-matter jurisdiction over the entire case whenever one of the claims satisfies its requirements. *See Moore v. Electric Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022) (quoting 14C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3726 (4th ed. 2021)). But even if supplemental jurisdiction is not mandatory, at a minimum, it is within this Court's discretion to exercise it over the remaining claim so long as the H.B. 3 claim satisfies the statute's requirements.

11

*for* the government. To conclude otherwise would write the phrase "or relating to" out of the statute—language that Congress specifically amended the statute to add. The Eleventh Circuit has interpreted this language as requiring only a "a connection or association between the act in question and the federal office." *Caver*, 845 F.3d at 1144. That requirement is met here. The federal government has asked Snap to distribute its messages to youth in Florida between the ages of 13 and 17, including in the form of "Commercials" that auto-play for the user and cannot be skipped. ECF No. 23-1 ¶ 5. The H.B. 3 claim seeks to impose liability on Snap for doing just that. Snap would be hindered in effectuating the government's directives if it were to purge the accounts of all youth in Florida between the ages of 13 and 15—allowing back only 14- and 15-year-olds who could demonstrate parental consent—or to cease its use of auto-play video.

DLA also argues that this requirement is not satisfied because Snap's agreements with the federal government include boilerplate language requiring compliance with applicable law, and thus the agreements cannot be read to authorize Snap to continue allowing youth to hold Snapchat accounts and targeting them with certain advertisements. ECF No. 34 at 8–9. But "whether a federal officer defendant has completely stepped outside of the boundaries of its office is for a federal court, not a state court, to answer." *In re Commonwealth's Mot.*, 790 F.3d at 472; *accord In re 3M Combat Arms Earplug Liab. Litig.*, 2020 WL 365617, at *4 (N.D. Fla. Jan.

22, 2020) (citing *Magnin v. Teledyne Cont'l Motors*, 9 F.3d 1424, 1428 (11th Cir. 1996)).

Seemingly underlying DLA's arguments is a frustration that Snap could be granted a federal forum in this case when only a portion of the actions that provide the basis for its potential liability relate to its work on behalf of the federal government. But other courts have found that federal officer jurisdiction is appropriate in such cases. For example, in *Express Scripts*, a county sued opioid manufacturers, distributors, and pharmacies in state court for causing or contributing to the opioid epidemic in the county. 996 F.3d at 247. Two of the defendants had a contractual relationship with the federal government to operate the Department of Defense's TRICARE Mail Order Pharmacy. *Id.* When the defendants invoked the federal officer removal statute to remove the case to federal court, the county argued that it did not apply in part because the complaint did not mention the distribution of opioids to veterans and had "nothing to do" with DOD or its program. *Id.* at 256. But the Fourth Circuit found that federal officer jurisdiction was proper because the county's claims sought damages for harm arising from "every opioid prescription" filled by the pharmacies in the county. *Id.* at 257. Some of those prescriptions were filled in accordance with the defendants' contract with DOD, and thus the county's claims "relate[d] to" their "governmentally-directed conduct." *Id.* The Eleventh Circuit has not addressed an analogous question, but this Court finds the Fourth

13

Circuit's reasoning in *Express Scripts* persuasive and faithful to the text of the statute. It is also consistent with the Eleventh Circuit's directive that the phrase "relating to" requires only a "connection" or association" between the act in question and the federal office, which is a "low" hurdle.[10] *Caver*, 845 F.3d at 1144. And here, like in *Express Scripts*, Snap faces liability for allowing youth to use its platform and targeting them with certain features, while a portion of those actions was undertaken in furtherance of the federal government's contractual directives. Accordingly, the H.B. 3 claim relates to Snap's governmentally directed conduct.

This Court is sympathetic to DLA's frustration. But the statute's broad language and the requirement that it be liberally construed dictate the outcome here.

## IV

In sum, because the requirements of the federal officer removal statute are satisfied as to the H.B. 3 claim, and because this Court finds that the exercise of supplemental jurisdiction over the FDUTPA claim is appropriate,[11] Plaintiff's motion to remand is **DENIED**.

**SO ORDERED on August 13, 2025.**

**s/Mark E. Walker**
**United States District Judge**

---

[10] This hurdle was easily cleared in *Caver*, but nothing in the case suggests that the element is only satisfied in comparably straightforward situations.

[11] *See* footnote 9, *supra*.